UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DANA MADONIA

Plaintiff,

v.

**REPORT AND RECOMMENDATION**
**09-CV-0552 (NAM)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

Defendant,

## I.Introduction

Plaintiff Dana Madonia filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges she has been unable to work since January 1, 1997, due to multiple sclerosis ("MS"), and its related symptoms, such as depression. The Commissioner of Social Security ("Commissioner") denied Plaintiff's applications.

Plaintiff, through her attorney, Mr. Peter W. Antonowicz, commenced this action on May 11, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 2, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II.Background

The relevant procedural history may be summarized as follows: Plaintiff initially applied for SSI on February 27, 2006, alleging disability beginning on January 1, 1997

(R. at 46).[1] However, despite alleging an onset date of January 1, 1997, Plaintiff now only challenges the ALJ's decision from February 27, 2006, through August 16, 2008.[2] Plaintiff's Brief, p. 3. Plaintiff alleged disability due to MS and its related symptoms, such as depression. Plaintiff's SSI application was denied (R. at 60). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 58). A video hearing was held between Utica, NY, and Newark, NJ, on July 8, 2008, before ALJ James Andres (R. at 362-86). Plaintiff, represented by counsel, appeared and testified (R. at 366-85). On August 12, 2008, ALJ Andres issued a decision finding Plaintiff not disabled for SSI (R. at 33-45).

Plaintiff had applied for DIB one month prior to the July 2008 hearing (R. at 16). It does not appear that the ALJ was aware of Plaintiff's DIB application at the time of the hearing. On August 15, 2008, once Plaintiff's DIB application had "come to [his] attention," ALJ Andres issued a subsequent (but nearly identical) decision finding Plaintiff not disabled for both SSI and DIB (R. at 16-29). The ALJ's decision became the Commissioner's final decision on April 7, 2009, when the Appeals Council denied Plaintiff's request for review (R. at 5-8).

Plaintiff, through counsel, timely commenced this action on May 11, 2009. (Docket No. 1). The Commissioner interposed an Answer on October 30, 2009. (Docket No. 10). Plaintiff filed a supporting Brief on February 2, 2010. (Docket No. 13). The Commissioner filed a Brief in opposition on March 23, 2010. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No. 9).

[2] Plaintiff appears to concede that the she engaged in substantial gainful activity through February 26, 2006. Plaintiff's Brief, p. 3. Plaintiff also indicates in her brief that she was awarded benefits for an application filed while this case was pending before the Court. Id. at 2. Plaintiff was granted benefits as of August 16, 2008. Id.

Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

## III.Discussion

### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act.

---

[4] The five-step process is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

For the reasons that follow, it is recommended that the matter be remanded for failure to properly evaluate the opinions from Plaintiff's treating neurologist.

**B. Analysis**

**1. The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the five-step process set forth above: the ALJ first found that Plaintiff met the insured status requirements of the Act through September 30, 2012 (R. at 19). The ALJ then found that "[t]here ha[d] been no continuous 12-month period since January 24, 2005 during which the claimant ha[d] not engaged in substantial gainful activity." Id. Plaintiff's

MS was found to be her sole severe impairment (R. at 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medially equal a listed impairment (R. at 25). Plaintiff's subjective complaints were found to be "not credible to the extent they [we]re inconsistent with the residual functional capacity" (RFC) (R. at 26). The ALJ found that Plaintiff retained "the residual functional capacity to perform simple, unskilled sedentary work, but she should avoid working around hazardous machinery, climbing ladders, ropes, and scaffolds. She [wa]s also limited to climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling to occasional (one-third) of the time." Id. The ALJ then found that Plaintiff was a younger individual between 18 and 44 with at least a high school education and was able to communicate in English (R. at 28). Based on Medical-Vocational Rule 201.27,[5] the ALJ found that there were a significant number of positions in the national economy that Plaintiff could perform. Id. Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision. Id.

**2. Plaintiff's Claims:**

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in weighing the opinions from Dr. Srinivasan Mani, her treating neurologist; b) the ALJ failed to properly evaluate Plaintiff's credibility; c) the RFC was flawed; and d) the ALJ erred in failing to obtain testimony from a vocational expert ("VE"). The Court will discuss each argument in turn:

[5] Medical-Vocational Rule 201.27 directs a finding of not disabled for a younger individual between 18 and 44, who was a high school graduate, with unskilled or no past work, and capable of performing sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.27.

**a) The ALJ Erred in Weighing the Opinions from Plaintiff's Treating Neurologist**

Plaintiff argues that the ALJ erred in evaluating the opinions from her treating neurologist, Dr. Mani. Plaintiff's Brief, pp. 7-12.

Dr. Mani completed an assessment of Plaintiff's functioning despite her impairments on June 16, 2008 (R. at 335-38). In his assessment, Dr. Mani indicated rather severe restrictions. For example, Dr. Mani limited Plaintiff to at most two hours of sitting and two hours of standing/walking in an eight-hour working day (R. at 337). Dr. Mani also stated that Plaintiff could rarely lift ten pounds (R. at 338). He found that Plaintiff could never crouch, squat, or climb ladders, but could occasionally twist, stoop, bend, and climb stairs. Id. Finally, Dr. Mani opined that Plaintiff's symptoms would frequently interfere with her attention and concentration, and that she was incapable of performing even low stress positions (R. at 336). In a March 2006 letter, Dr. Mani also stated that he "would consider [Plaintiff] disabled to a significant extent for any gainful employment" (R. at 230).

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a

---

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

claimant's treating physician is ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

In the event a treating physician's opinion has been denied controlling weight, ALJs are instructed to consider the following factors to determine the appropriate weight to afford the opinion: (1) whether the source examined the claimant; (2) whether the source had a treating relationship with the claimant; (3) the supporting evidence submitted by the source; (4) the consistency of the opinion with the record; (5) whether the source is a specialist; and (6) any other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d)(1)-(6).

The ALJ "d[id] not give significant weight to" Dr. Marni's medical opinion (R. at 27). The ALJ reasoned that the assessment was "non-specific," and repeatedly noted that Dr. Mani's opinions were not supported by objective medical evidence.[7] Id. The only example the ALJ offered to support his finding was "Dr. Mani's opinion that the claimant was unable to sit for 5 minutes [at a time] [wa]s in direct contrast to his own office notes and clinical findings, as well as the claimant's daily activities, work activity, and testimony." Id. The Court recommends remand based on the following errors in the ALJ's evaluation of Dr. Mani's opinions:

Both the Regulations and the Second Circuit have made it clear that a treating physician's opinion cannot be rejected for an apparent lack of objective medical evidence without first re-contacting that source for clarification. See 20 C.F.R. § 404.1512(e)(1) (the ALJ "will seek additional evidence or clarification from [the

[7] The ALJ also considered Dr. Mani's opinion that Plaintiff could not perform gainful activity, but "note[d] that the status of disability [wa]s a legal issue and not a medical issue. As such, the decision of whether a person [wa]s disabled or not [wa]s reserved to the Commissioner." Id. The Court finds no error in this portion of the ALJ's decision. See 20 C.F.R. § 404.1527(e) (medical source opinions concerning whether an individual can work is a decision reserved to the commissioner, and "will not [be] give[n] any special significance").

claimant's] medical source when the report from [the claimant's] medical source . . . d[id] not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1996) ("even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the claimant's treating physician] *sua sponte*") (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)). Furthermore, the ALJ's finding that Dr. Mani's opinion was "non-specific," offers an additional reason to re-contact for clarification. See 20 C.F.R. § 404.1512(e)(1) (the ALJ "will seek additional evidence or clarification from [the claimant's] medical source when the report from [the claimant's] medical source contains a[n] . . . ambiguity that must be resolved"). The record fails to document any attempt by the ALJ to re-contact Dr. Mani for clarification of his opinion.

The ALJ also noted that Dr. Mani's "opinion that the claimant was unable to sit for 5 minutes" conflicted with Plaintiff's daily living activities, testimony, and work activities (R. at 27). The consistency of a treating physician's opinion with the record as a whole is certainly relevant in weighing the assessment. 20 C.F.R. § 404.1527(d)(4). However, it is not clear to the Court that Dr. Mani's five minute sit limitation was inconsistent with Plaintiff's testimony because the hearing record contains somewhat conflicting evidence. For example, Plaintiff testified that she worked as a school bus monitor for several months during the relevant time period (R. at 369). Plaintiff's testimony that she "[m]ostly s[a]t" while working, suggests that she had the ability to sit for more than five minutes at a time (R. at 372). However, when asked how long she could "sit[] in a work-style position" without "slouching or moving around," she responded with "[j]ust a couple of minutes" (R. at 380). Thus, it is not clear to the Court that Plaintiff's work activities

and testimony were inconsistent with Dr. Mani's opinion that Plaintiff could sit for only five minutes at a time. The Court's ability to review the ALJ's decision for substantial evidence is further frustrated by his failure to elaborate on his finding by offering any supportive evidence from the record. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (requiring the Commissioner to set forth "the crucial factors in [his] determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.") (internal citations removed). Instead, the ALJ made the conclusory finding that Dr. Mani's five minute limitation was inconsistent with Plaintiff's work activities and testimony without citing to any portion of the record to substantiate that finding.

However, even assuming *arguendo* that the ALJ's finding is supported by substantial evidence, it does not logically following that an inconsistency with one small portion of Dr. Mani's assessment necessarily invalidates all his opinions. See Social Security Ruling 96-2p, 1996 WL 374188 at *5 (S.S.A.) ("adjudicators must always be aware that one or more of [a treating physician's] opinions may be controlling while others may not"). The ALJ failed to consider several aspects of Dr. Mani's assessment that were consistent with Plaintiff's testimony. For example, Dr. Mani opined that Plaintiff's symptoms would frequently interfere with her attention and concentration (R. at 336). This is fairly consistent with Plaintiff's testimony that she would become confused while working as a school bus monitor (R. at 377). Specifically, Plaintiff testified that the "[c]onstant commotion with the kids on the bus, the talking, the background noise, . . . even the sound of the engine, [was] very confusing to [her]. It ma[de] [her] head rattle." Id. Plaintiff also testified that "[d]ealing with the stress of the

kids [wa]s very difficult" and that "[s]tress [wa]s a huge part of . . . how [she] fe[lt]" (R. at 376). Dr. Mani similarly opined that Plaintiff was incapable of performing even low stress positions (R. at 336). Dr. Mani stated that Plaintiff could occasionally lift less than ten pounds and rarely lift ten pounds (R. at 228). Plaintiff also testified that she would have difficulty lifting ten pounds eight times per day, five days per week (R. at 382).

Finally, had the ALJ properly considered all the relevant factors, he would have discovered that Dr. Mani was a neurologist. Dr. Mani's status as a specialist should have bolstered the credibility of his findings. 20 C.F.R. § 404.1527(d)(5).

Therefore, the Court recommends remand to allow the ALJ an opportunity to reevaluate Dr. Mani's opinions. Furthermore, the ALJ should re-contact Dr. Mani to request that he clarify the basis for his opinions as well as any portion of the opinion that the ALJ finds to be "non-specific."

**b) The ALJ Erred in Evaluating Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to properly consider her credibility. Plaintiff's Brief, pp. 10-12, 16-20.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); Social

Security Ruling 96-7p, 1996 WL 374186, at *2 (S.S.A.) [hereinafter SSR 96-7p]. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. SSR. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c). Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the Regulations.[8] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii). For the following reasons, the Court finds that the ALJ failed to properly evaluate Plaintiff's credibility.

The ALJ completed the two-step credibility analysis by "find[ing] that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below" (R. at 26).

Nonetheless, despite indicating that a discussion of plaintiff's credibility would follow his two-step finding, the ALJ failed to engage in any meaningful evaluation of the factors. Instead, the ALJ's only explanation for his credibility finding was that he

> f[ound] the claimant credible to the extent that she would experience fatigue as a result of her multiple sclerosis and the evidence shows that she clearly has a loss of an ability to perform complex tasks or multiple tasks and there are some coping issues as well. The residual functional capacity was, accordingly, reduced to accommodate those limitations.

---

[8] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

> However, although the undersigned d[id] not wish to minimize the difficulties the claimant has been subjected to, based upon her daily activities, the clinical findings and [his] own observations, [the ALJ] just [could not] find that she was incapable of at least simple and complex tasks.

Id. Notably absent from the ALJ's discussion are the "daily activities, clinical findings and . . . observations" to which he is referring. While the Court appreciates the ALJ's apparently genuine compassion, this conclusory finding hardly amounts to stating his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Therefore, the Court finds that the ALJ erred in evaluating Plaintiff's credibility and recommends remand on that basis.

**c) The RFC Is Necessarily Flawed**

Plaintiff argues that the ALJ erred in evaluating the RFC because the ALJ failed to properly evaluate the opinions of Plaintiff's treating neurologist, Dr. Mani, and also failed to properly evaluate her credibility. Plaintiff's Brief, pp. 4-12.

An individual's "residual functional capacity is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In order to determine a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence," and evaluate her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(3), (4). The claimant's physical and mental abilities must also be assessed "on a regular and continuing basis." §§ 404.1545(b), (c). This is defined as "8

hours a day, for five days a week, or an equivalent work schedule." Social Security Ruling 96-8p, 1996 WL 374184, at *1 (S.S.A.).

The Court agrees with Plaintiff that the ALJ erred in evaluating the RFC. As discussed above, the ALJ also failed to properly evaluate Dr. Mani's opinions as well as Plaintiff's credibility. Thus, the RFC is necessarily flawed and must be reconsidered upon remand.

**d) The ALJ Must Necessarily Reconsider Whether to Obtain Evidence from a VE**

Plaintiff's final argument is that the ALJ erred in failing to request evidence from a VE. Plaintiff's Brief, pp. 12-16.

The use of the Medical-Vocational Guidelines is inappropriate "where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment . . . . '[S]ignificantly diminish' . . . mean[s] the additional loss of work capacity beyond a negligible one or, … one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp v. Bowen, 802 F.2d 601, 605-606 (2d Cir. 1986). "If the ALJ finds that [the claimant's] ability is significantly diminished, then the Commissioner should be required to present the testimony of a vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with [the claimant's] limitations." Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

Plaintiff argues that her "nonexertional impairments regarding concentration, memory and communication," obligated the ALJ to obtain evidence from a VE. Plaintiff's Brief, pp. 12-13. However, as the RFC currently stands, the Court finds no error in the ALJ's failure to obtain evidence from a VE based on Plaintiff's mental limitations.

The ALJ found Plaintiff was capable of "simple, unskilled" work (R. at 26). No further mental limitations were contained in the RFC. Thus, because Plaintiff was found capable of performing unskilled work, the ALJ was not obligated to obtain testimony from a VE based on her mental limitations. See 20 C.F.R. Pt. 404, Subpt. P, App 2, 201.00 (According to the Medical-Vocational Guidelines, "[a]pproximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy.").

While unclear, Plaintiff's Brief could be read to contend that Plaintiff's other non-exertional impairments required the ALJ to obtain testimony from a VE. Plaintiff's Brief, pp. 12-16. The Court disagrees. Along with limiting Plaintiff to unskilled sedentary work, the ALJ also found that "she should avoid working around hazardous machinery, climbing ladders, ropes, and scaffolds. She [wa]s also limited to climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling to occasional (one-third) of the time" (R. at 16). However, "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." Social Security Ruling 96-9p, 1996 WL 374185, at *7 (S.S.A.). Furthermore, although "[a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base," here, the ALJ limited Plaintiff to occasionally stooping. Id. at *8. A "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." Id. Thus, as the RFC

currently stands, the Court finds no error in the ALJ's failure to obtain testimony from a VE.

Nevertheless, the Court has found that the RFC is necessarily flawed based on the ALJ's failure to properly evaluate Dr. Mani's opinions and Plaintiff's credibility. Thus, after a proper analysis has been completed, and the RFC has been reevaluated, the ALJ may need to request testimony from a VE.

## IV.Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to properly weigh the opinions from Plaintiff's treating neurologist, Dr. Mani, as well as for failure to properly evaluate Plaintiff's credibility.

## V.Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED: June 2, 2011

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

DATED: June 2, 2011